UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| QBE INSURANCE CORPORATION, | Case No. 2:20-cv-02104-RFB-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| SIMONE RUSSO, RICHARD DUSLAK, and JUSTIN SESMAN, | |
| Defendants. | |
| RICHARD DUSLAK and JUSTIN SESMAN, | |
| Counterclaimants, | |
| v. | |
| QBE INSURANCE CORPORATION, | |
| Counter-Defendants. | |

Pending before the Court is QBE Insurance Corporation's Motion for Reconsideration. ECF No. 150. The Court has considered the Motion, the Response filed by Simone Russo (ECF No. 153), and the Reply at ECF No. 156. Also pending before the Court are the (i) Amended Memorandum of Fees and Costs (ECF No. 145), the Response thereto (ECF No. 151), and Reply (ECF No. 154), and (ii) Motion to Strike the Reply to Application for Fees (ECF No. 155), Response thereto (ECF No. 158) and Reply (ECF No. 161). The Motion for Reconsideration is denied; fees are granted as discussed below; and the Motion to Strike the Reply is denied.

I.      **Background**

On  July 20, 2021, Simone Russo ("Russo") filed the Second Motion to Compel (ECF No. 108), which was granted in part by the Court on October 22, 2021 (ECF No. 141). A transcript of that proceeding is found at ECF No. 149. The Second Motion to Compel sought an order compelling QBE to "meet its obligations to [provide] proper responses to requests for production under FRCP 34 and to issue an Order to remedy issues that have arisen in depositions as a result of counsel for

QBE appearing remotely." ECF No. 108 at 1. In the Conclusion of the Motion Russo stated she would "leave it to the Court to determine what action, if any, should be taken as a result of" Plaintiff's counsel's conduct leading up to and during the meet and confer conference. *Id*. at 14. In addition to discussing conduct of concern by QBE's counsel, the Second Motion to Compel addressed QBE's faulty and inadequate privilege log and a request that the Court find QBE waived the attorney-client privilege.

At the hearing on Russo's Motion, the Court discussed the many problems with the privilege log produced by QBE including, but not limited to, (i) the use of attorney-client privilege to justify every entry, which the Court found evidenced carelessness when designating why documents were withheld, (ii) the numerous log entries that were, at best, incomplete,[1] and (iii) numerous log entries reflecting emails withheld based on claims of attorney-client privilege but which were exchanges between QBE's counsel and current or former opposing counsel. ECF No. 141 at 16-17, 21-23.

The Court specifically addressed QBE's continued failure to properly analyze what it was producing and what it was redacting based on claims of attorney-client privilege. The Court explained that a party can neither "redact everything" nor remove redactions "just because somebody asks you to [do so.]" *Id*. at 19. The Court further explained that while time consuming, an attorney must go through documents to ensure that what is redacted is either privileged communication or work product. *Id*. Once work product or a privilege is identified, the item must be listed on a privilege log. *Id*. In response, QBE argued that the Court's comments were "something … [QBE] would expect to occur in a meet and confer." *Id*. at 20. After much back and forth, and an attempt to help QBE understand its obligations, the Court stated "what isn't clear to the Court is how this [privilege log] was prepared such that every single entry is an attorney-client privilege. … That is inappropriate. It's sloppy. It does not comply with what the rules require. And it was your job to … oversee that [process]. … And it wasn't done properly." *Id*. at 23.

With respect to the documents that were redacted inappropriately, and then unredacted, QBE claimed the Court had ordered the removal of redactions. *Id*. at 32 ("And you made the comment to

---

[1] By way of example, seven entries included documents in which the author was identified only as "Administrator," there was no identified recipient of the documents, and attorney-client privilege was claimed to explain the failure to produce each of these withheld documents.

me that suggested, at least my interpretation, that I needed to withdraw those redactions ….").  The Court made clear it had not ordered QBE to remove redactions from attorney-client privileged communications, which prompted QBE to state it was "not being articulate."  *Id*.  QBE then asked to be excused from its carelessness because it was "trying to be proactive, and yet here … went too far."  *Id*.  QBE's counsel complained it was "being accused simultaneously of withholding things based on privilege, and I'm sloppy there.  And then when I unredact, I'm sloppy there.  So I kind of feel whipsawed relative to everything."  *Id*.  The Court could only respond with "sloppiness on both sides doesn't … correct the problem."  *Id*.

The Court also discussed QBE's failure to timely respond to opposing counsel's request made at the meet and confer held on June 10, 2021.  QBE complained it had no warning of what counsel for Russo wanted to discuss, but this is not accurate.  *See* ECF No. 108-5 at 1.  Further, when opposing counsel forwarded documents to QBE's counsel at the meet and confer in an effort to provide clarity, QBE's counsel stated he had no access to his email and needed 10 days to respond to the inquiries.  ECF Nos. 108 at 3-4; 108-7 at 3, 5, 6, 18.

A transcript of that meet and confer included the following exchange:

> David Sampson [counsel for the moving party]: I did highlight them and I do appreciate that the information that was previously claimed as "privileged" has subsequently been produced.  My concern is how do I trust any of the other productions.  When you say, "We were careful," well if you were careful, how is it that an email … [from] me got put in the privileged log.

> William Reeves [counsel for QBE]: I don't know what to tell you.  Yeah, I did — I'm an officer of the court, I've made — produced documents, I was obviously at the hearing, we have complied with everything.  To the extent that you don't trust that which is being represented, then I'd defer to you whether you want to involve the court.

ECF No. 108-7 at 1.  After additional discussion, opposing counsel tried to explain to QBE the concern with the inconsistent and inaccurate redactions to document:

> Most of the things that I had have already been discussed actually.  So, I am troubled by a few things there.  So, Q 868 actually has a redacted portion on it which is not redacted on Q 1389, and it seems to have been it was just overlooked the second time around, because it's the same document.  But what was not redacted the second time around was a statement that we have no issue with these new individuals entering the case, and that there had been an assessment done at some level that they didn't care.  And so, that information should have been produced the whole time.  It shouldn't have been redacted anywhere, and it leads me to the concern that's been expressed by Mr. Sampson that there's probably a lot of information

here that shouldn't have been redacted.  And I have a potential solution that I'd like to offer in a moment, but I'll go through a couple other things.  Another document that Mr. Sampson brought up is Q 2311, and it says, "I confirmed with your insurer that they were not employees today, too," and then there's a whole bunch of stuff redacted with respect to the document.  If any portion of — while I'm not saying that it's attorney-client privileged, it certainly could have had the argument just as much as some of the other portions of redactions could have, but it seems to be a clear cherry-pick because it has the effect of QBE covering their own backside, from my perspective, intentionally and giving up information that in other places they had been redacting.  So it seems that QBE is choosing, not based necessarily on privilege, but based primarily on strategy, whether they are going to provide attorney-client communications or not.  And when it seems to benefit them it looks like it is leaking out, and when it does not seem to benefit them, it looks like it's being redacted.  I think that there's obviously some trust issues that we have between the parties in the case, and I think that an appropriate thing that we ought to do is I think ultimately every portion of the file that has been redacted in any way I think needs to be brought either for in-camera review, or we need to bring it in front of someone who is independent that we agree to.  And so, I think that's going to be necessary and anyway.

ECF No. 108-7 at 7.  The parties continued their discussion ending with QBE's counsel stating he was "unclear" and asking if the parties were "revisiting that in ten days or are we going in that direction at this point?"  Opposing counsel responded, "Well I'd like to see what we get in ten days" to which QBE counsel agreed.  *Id*. at 18.  Unfortunately, as of the date the Motion to Compel was filed, QBE had not provided the clarification promised at the meet and confer.  ECF No. 108 at 4.

QBE argues it produced documents within the promised ten day time frame, which is true; however, the production did not resolve the issues raised regarding why the same documents were initially redacted, redactions were removed, some removed redactions included arguably attorney-client privileged communications, while other removed redactions showed there was never any basis to withhold the information.  ECF No. 149 at 35.  QBE nonetheless continued to assert that by sending an email, with attachments stating "See attached" QBE responded to Defendants' concerns regarding inconsistencies in production.  *Id*.  The Court disagreed.  A production of documents does not provide clarity with respect to why things were originally redacted that should not have been.  *Id*. at 43.  The Court stated there were sufficient questions about the production and privilege log to justify Defendants' concerns regarding that which was originally withheld and whether additional information withheld should be produced.  *Id*. at 43-44.  However, QBE continued to contend the production of documents met its obligations while stating it could not understand what it had failed to do.  *Id*. at 44-45.

1    Ultimately, the Court stated it would not require QBE to update its privilege log, but instead

2    would exercise its authority to provide guidance for future productions and claims of privilege. The

3    Court also ordered the parties to meet and confer regarding obtaining a third-party to review the

4    documents over which privilege was asserted. When QBE continued to express confusion, stating

5    it believed "the Court came into the hearing today believing that we didn't provide the documents,"

6    the Court corrected counsel explaining what it found had not been provided was the explanation …

7    as to why things were originally redacted and then unredact[ed] …" ECF No. 149 at 43.

8    The Court granted the Motion to Compel and granted fees and costs. The Court stated that

9    even if QBE had satisfied its obligations after the Motion to Compel was filed, fees and costs could

10    be awarded under Rule 37(a). *Id*. at 45-46.

11    QBE now argues that the award of fees and costs are improper because none of the relief

12    requested in the Motion to Compel was granted. ECF No. 150 at 1. QBE argues that Russo did not

13    seek "an award of sanctions under FRCP 37(a) or (b)." *Id*. at 2. And, QBE argues that it addressed

14    and corrected all deficiencies before the Motion to Compel was filed. *Id*. at 3.

15    In Response to the Motion for Reconsideration, Russo argues the Motion to Compel was

16    granted, that QBE never provided to Defendants the explanation requested, instead providing an

17    email that contained two words— "*See* attached"—, the Court did not award sanctions but attorney's

18    fees and costs under Fed. R. Civ. P. 37(a)(5)(A). ECF No. 153 at 3-4. In Reply, QBE reiterated its

19    argument that it responded "substantively … to all issues raised via the meet and confer process."

20    ECF No. 156 at 1; *see also id*. at 3 *citing* ECF No. 150 at 13 (Ex. B) which is an email from QBE to

21    Defendants listing a series of documents each followed by one of three short explanations:

22    "[i]nformation appears privileged – attorney impressions"; "[e]nclosures referenced therein are Ex.

23    …"; or "[a]ttached." *Id*.

24    **II.    Discussion**

25        A.    Standard for Reconsideration.

26    Motions for reconsideration "should not be granted, absent highly unusual circumstances."

27    *Moraga v. Wolfson*, Case No. 2:16-cv-287-JCM (VCF), 2019 WL 11707396, at *1 (D. Nev. Oct.

28    10, 2019) *citing Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880

1   (9th Cir. 2009).  "Reconsideration is appropriate if the district court (1) is presented with newly

2   discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if

3   there is an intervening change in controlling law."  *Id*. citing *School Dist. No. 1J v. ACandS, Inc.*, 5

4   F.3d 1255, 1263 (9th Cir. 1993).  Here, QBE does not argue there is any newly discovered evidence,

5   that there has been an intervening change in controlling law or that the initial decision was manifestly

6   unjust.  *See* ECF No. 150.

7          Local Rule 59-1(b) cautions parties that "[m]otions for reconsideration are disfavored.  A

8   movant must not repeat arguments already presented unless (and only to the extent) necessary to

9   explain controlling, intervening law or to argue new facts.  A movant who repeats arguments will be

10  subject to appropriate sanctions."  In subsection (a) of this Rule, the District of Nevada further

11  advises "[a] party seeking reconsideration under this rule must state with particularity the points of

12  law or fact that the court has overlooked or misunderstood."  LR 59-1(a).

13          B.       QBE's Argument Fails to Identify a Basis for Reconsideration.

14          QBE argues that "Russo did not seek an award of sanctions under Fed. R. Civ. P. 37(a) or

15  (b)."  ECF No. 150 at 2.  QBE is correct.  However, the Court did not grant sanctions, but an award

16  of fees.  Thus, this argument lacks merit.

17          QBE next argues that it was not prepared to address the Court's criticisms of its poorly

18  prepared privilege log for which no prior objection had been made.  *Id*. at 3.  This assertion is

19  incorrect as the Motion to Compel discussed, at length, problems with the privilege log.  ECF No.

20  108 at 2 ¶¶ 4-5 citing Exs. 5 and 6; at 3 ¶¶ 7-8 citing Exs. 4, 7; at 9.  Thus, the Court finds it untenable

21  that QBE was not prepared to address these concerns; and, this argument also lacks merit.

22          Finally, QBE contends it addressed all the concerns raised by opposing counsel prior to the

23  filing of the Second Motion to Compel.  ECF No. 150 at 3.  This is not accurate.  QBE did not

24  provide an explanation or description of its process for identifying attorney-client privilege on which

25  it based what had not been disclosed.

26          In sum, the Court interprets QBE's Motion for Reconsideration to argue that the decision of

27  the Court to grant the Second Motion to Compel was clear error because the Motion was not granted

28

6

1  and, therefore, there was no justification of an award of fees and costs under Rule 37(a).  This

2  argument fails as a matter of law.

3       Rule 37(a)(5)(A) states, in relevant part: "If the motion [to compel] is granted—or if the

4  disclosures or requested discovery is provided after the motion was filed—the court must, after

5  giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the

6  party or attorney advising that conduct, or both to pay the movant's reasonable expenses …."  Rule

7  37(a)(5)(C) states that if the motion to compel "is granted in part and denied in part" reasonable

8  expenses pertaining to the portion of the motion granted are to be awarded.  Here, the Court denied

9  the Motion to Compel to the extent it sought a finding that QBE had waived its attorney-client

10  privilege.  The Court granted the Motion to Compel to the extent it addressed QBE's failure to

11  properly identify attorney-client privilege on the privilege log and act carefully with respect to the

12  redactions it made to documents produced.  ECF No. 149 at 48.  Consistent with the suggestion of

13  counsel for Defendants, the Court ordered the parties to meet regarding every document listed on

14  the privilege log and discuss employing a third party to review all documents QBE claims are

15  privileged.  ECF No. 149 at 46.  This order granted Russo's request to compel QBE to meet its

16  obligations to provide proper responses to requests for production under FRCP 34.  Having granted

17  this relief, the Court acted in accordance with its authority under Rule 37(a)(5)(C) to award fees and

18  costs.  The Court finds no clear error and, as such, the Motion for Reconsideration is denied.

19       C.    Russo's Memorandum of Fees.

20       The Court "has a great deal of discretion in determining the reasonableness of the fee and, as

21  a general rule, [an appellate court] will defer to its determination ... regarding the reasonableness of

22  the hours claimed by the [movant]."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453 (9th

23  Cir. 2010) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)).  When reviewing

24  hours claimed by the party to whom fees have been awarded, the Court may exclude hours arising

25  from overstaffing, duplication, excessiveness or that are otherwise unnecessary.  *See*, e.g., *Hensley*

26  *v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Cruz v. Alhambra School Dist.*, 601 F.Supp.2d

27  1183, 1191 (C.D. Cal. 2009).  When determining the reasonable hourly rate to be applied to an award

28  of attorney's fees, the Court must consider the "prevailing market rates in the relevant community"

and compare the rates of "lawyers of reasonably comparable skill, experience and reputation" to the rates requested in the case before the Court. *Soule v. P.F. Chang's China Bistro, Inc.*, Case No. 2:18-cv-02239-GMN-GWF, 2019 WL 3416667, at *1 (D. Nev. July 26, 2019) (internal citation omitted). This is a two step process. The first step requires the Court to "calculate the lodestar amount by" multiplying "the number of hours reasonably expended on the" motion at issue "by a reasonable hourly rate." *Id*. (citations omitted).[2] The second step requires the Court to consider adjusting the lodestar amount upward or downward, something done "only on rare and exceptional occasions, … using a multiplier based on factors not subsumed in the initial calculation of the lodestar." *Id. citing Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal brackets removed).

### 1.    *The Rates Charged*.

Russo seeks an award of $14,160.00 in fees incurred in drafting and litigating the Second Motion to Compel and the Supplement. ECF No. 145 at 2. All the time entries made were by Mr. Sampson, who charged $600 an hour for his services. *Id*. at 4. Mr. Sampson states he is a graduate of the J. Reuben Clark Law School at BYU, has practiced law for over 23 years, "is well respected for his skill as a litigator, and is a certified specialist in personal injury law as recognized by the Nevada State Bar." ECF No. 145 at 3. QBE contends that Mr. Sampson should receive an hourly rate of $250-$350 an hour. ECF No. 151 at 2.

In 2019, the Court found "ample case law establishing that the upper range of the prevailing rates in this District is $450 for partners" such as Mr. Sampson. *Soule*, 2019 WL 3416667, at *2 (citation omitted). In 2020, the District of Nevada approved "[a]n hourly rate of $495 for … a partner at the law firm of Freedom Law Firm, LLC, based on his 21 years of practicing as a licensed attorney and his experience in consumer finance litigation." *McGuire v. Allegro Acceptance Corp*, Case No. 2:18-cv-01635-MMD-VCF, 202 WL 3432533, at *4 (D. Nev. June 22, 2020). In 2021, the District of Nevada rejected an hourly rate of $500 because, as is true here, the party seeking that rate failed to show that "$500 rate is in line with the prevailing rates in the community for similar services by

---

[2]       Reasonable attorneys' fees are generally calculated based on the traditional "lodestar" method. *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 978 (9th Cir. 2008).

1  lawyers of comparable skill, experience, and reputation." *Spring v. Bluestem Brands, Inc.*, Case No.

2  2:20-cv-2212-GMN-NJK, 2021 WL 1269118 (D. Nev. Apr. 6, 2021).

3      Here, after considering the nature of this case, Mr. Sampson's 23 years of practice, the area

4  of law in which this dispute is litigated, and the prevailing rates in the Las Vegas community, the

5  Court finds an hourly rate of $600 is not supported.  The Court awards the hourly rate of $450

6  consistent with its decision in *Soule*.

7          2.      *Hours expended*.

8      Counsel claims 23.6 hours spent in preparing, filing, and arguing his Motion to Compel,

9  Reply, and Supplements.  Of this time, 6.2 hours was spent preparing the Motion, 2.2 hours was

10  spent reviewing QBE's Response, 4 hours was spent drafting the Supplement to the Motion to

11  Compel, 2.4 hours was expended reviewing QBE's Response to the Supplement, and 3.2 hours was

12  spent preparing for and attending the hearing on the Motion to Compel.  This totals 18 hours of

13  attorney time.  However, as stated above, the Motion to Compel was denied with respect to waiver

14  of the attorney-client privilege.  A review of the Motion, Response, Supplement, Response to the

15  Supplement, and the transcript of the proceedings evidences approximately one-third of the time was

16  spent on this issue.  Thus, the Court reduces the total amount of time to 12 hours.  Total fees awarded

17  are $5,400.[3]

18      D.      The Motion to Strike Reply to Application for Fees.

19      QBE moves to strike Russo's Reply in Support of Attorney's Fees at ECF No. 154.  QBE

20  argues that no reply brief was ordered by the Court rendering this filing "defective and properly

21  stricken."   ECF No. 155 at 1.  The remainder of QBE's Motion is not a Motion to Strike, but

22  effectively a sur-opposition in response to the reply brief QBE seeks to strike.  *Id*. at 2-3.  Russo

23  responds to the Motion to Strike deferring to the Court whether to consider the reply.  ECF No. 158

24  at 1.  The Reply was not considered; however, a review of the transcript of the proceedings (ECF

25  No. 149) did not make clear whether a reply was allowed.  Accordingly, because the Reply QBE

26  seeks to strike was not precluded by the Court, there is no basis to strike the document from the

27  record.  The Motion to Strike is therefore denied.

28  _____
   [3]      No request for costs was submitted by Counsel for Russo.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    Order**

        IT IS HEREBY ORDERED that the Motion for Reconsideration (ECF No. 150) is DENIED.

        IT IS FURTHER ORDERED that the Motion to Strike (ECF No. 155) is DENIED.

        IT IS FURTHER ORDERED that attorney's fees are awarded to Russo to be paid by QBE in the amount of $5,400.00 arising from the Court granting, in part, Russo's Second Motion to Compel (ECF No. 108).  Such amount shall be paid within 30 days of the date of this Order.

        Dated this 10th day of March, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE